U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 1 2026
AT ____ O'CLOCK ______
John M. Domurad, Clerk - Plattsburgh

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the
Northern District of New York

UNITED STATES OF AMERICA
v.

GREIFFEER CALCEDO SANCHEZ and
KELLY GONZALEZ ARIAS,

Defendants.

Case No. 8:26-MJ-223 (GLF)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of September 29, 2026, in the county of Clinton in the Northern District of New York the defendants violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 8 U.S.C. § 1324(a)(1)(A)(ii) | The Defendants, knowingly and in reckless disregard of the fact that aliens have come to, entered, and remained in the United States in violation of law, did transport, move and attempt to transport and move, such aliens within the United States by means of transportation or otherwise in furtherance of such violation of law. |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

Amanda L. Harvey 9/30/2026 2:55pm
*Complainant's signature*

U.S. Border Patrol Agent Amanda L. Harvey
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: Oct. 1, 2026

*Judge's signature*

City and State: Plattsburgh, New York

Honorable Gary L. Favro
*U.S. Magistrate Judge*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Amanda L. Harvey, hereby depose and state under penalty of perjury:

1. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke Border Patrol Station. I have been a Border Patrol Agent since April 2011. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques. This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases. It does not set forth all of my knowledge about the investigation.

2. I submit this affidavit in support of a criminal complaint charging defendant Greiffeer CALCEDO SANCHEZ and Kelly GONZALEZ ARIAS with violating 8 U.S.C. § 1324(a)(1)(A)(ii), transporting aliens.

**<u>Probable Cause</u>**

3. On September 29, 2026, at approximately 11:42 a.m., agents assigned to the Burke Border Patrol Station were monitoring border camera activations when they observed a dark-colored Dodge Durango traveling northbound on Whalen Road near Churubusco, New York. Whalen Road is a seasonal, unmaintained gravel road that has historically been utilized by alien smugglers to pick up individuals near the United States-Canada international border. Whalen Road is a north-south roadway that begins at Looby Road, runs north, intersects with Merchia Road, continues north, and ends at Santamore Road. The intersection of Santamore Road and Whalen Road is approximately ¾ to one mile from the United States-Canada international border.

There are very few residences along Whalen Road, and the road is typically utilized only by local residents and farmers in the area.

4. Agents did not recognize the Dodge Durango as a local vehicle. Upon reviewing the camera activations, agents observed that the vehicle's rear license plate was obscured by a tinted license plate cover, preventing agents from initially determining the vehicle's registration. Tinted license plate covers are prohibited under New York State law. Approximately five minutes later, agents observed the same Dodge Durango traveling southbound on Whalen Road during a subsequent border camera activation. Agents also observed that the vehicle did not display a front license plate, indicating that it was likely registered outside of New York, as New York State requires vehicles to display both front and rear license plates.

5. Agents responded to the intersection of Looby Road and Whalen Road but were unable to locate the Dodge Durango, as the vehicle had already passed the area. Agents continued to U.S. Route 11 and traveled eastbound toward State Route 190 while notifying Champlain Border Patrol agents to be on the lookout for the vehicle. A Champlain Border Patrol agent operating an unmarked vehicle was positioned near the intersection of State Route 190 and State Route 374 when the agent observed the Dodge Durango traveling southbound on State Route 190 toward Plattsburgh. The Champlain agent was able to identify the vehicle's license plate as North Carolina WBL 2060 and queried the registration through Swanton Sector Radio. Registration checks revealed that the vehicle was registered to a Greiffeer CALCEDO SANCHEZ of Dudley, North Carolina.

6. The Champlain Border Patrol agent followed the Dodge Durango from State Route 190 to State Route 3, where the vehicle entered Interstate 87 and proceeded southbound. Agents from the Burke Border Patrol Station caught up to the Dodge Durango and immediately observed several subjects seated in the rear of the vehicle. At approximately 12:37 p.m., agents initiated a roving patrol stop of the Dodge Durango to conduct an immigration inspection on Interstate 87 near the Saranac River bridge in Clinton County, NY.

7. Agents approached the vehicle, identified themselves as Border Patrol Agents, and observed five occupants: a driver, later identified as CALCEDO SANCEZ, a front-seat passenger, later identified as

GONZALEZ ARIAS, and three passengers in the back seats of the vehicle, later identified as F.A.B, A.F.T., and M.S.M. Agents observed that the rear passengers were soaking wet and appeared to have recently walked through wet, wooded terrain. The driver and front-seat passenger were both dry.

8. Agents conducted immigration inspections on all five subjects. The second-row passenger, later identified as F.A.B., initially claimed to be a Canadian citizen but later admitted to being a Venezuelan citizen. The female and male rear passengers, later identified as M.S.M. and A.F.T., seated in the third row claimed to be Italian and Portuguese citizens, respectively. All three rear passengers were unable to produce immigration documents authorizing them to enter, transit through, or remain in the United States. The driver, CALCEDO SANCHEZ, and front-seat passenger, GONZALEZ ARIAS, claimed to be Venezuelan citizens with pending refugee claims in the United States.

9. Based on the border camera images depicting the Dodge Durango near the international border, agents' observations that the rear passengers were soaking wet and covered in foliage, and the results of the immigration inspections conducted following the vehicle stop, agents detained all five subjects and transported them to the Burke Border Patrol Station for records checks, interviews, and processing.

10. Records checks confirmed that F.A.B is an alien and citizen of Venezuela, A.F.T. is an alien and citizen of Portugal, and M.S.M. is an alien and citizen of Italy, with no record of legal entry into the United States.

11. During a post-*Miranda* interview, CALCEDO SANCHEZ described the area in which he picked the three individuals up, the type of clothing the individuals were wearing, and admitted to knowing his proximity to the border. During a post-*Miranda* interview, GONZALEZ ARIAS admitted that she and CALCEDO SANCHEZ were doing a favor for a friend and that she was suspicious of the people they had picked up due to the fact they were dirty, had wet shoes, and all had backpacks. GONZALEZ ARIAS also admitted that the three individuals looked similar to how she looked when she crossed into the United States illegally through the southwest border.

12. During a post-*Miranda* interview, F.A.B. admitted to paying $500 through Zelle as a downpayment for being smuggled into the U.S. and he was planning to pay an additional $1,500 once he arrived in New York City. F.A.B. admitted to crossing the United States – Canada international border with the two other passengers. F.A.B. stated there was an individual providing them with instructions through the phone, and that individual knew where the patrols are through an unnamed system that updates every ten minutes. F.A.B. claimed M.S.M. paid $500 in cash to be smuggled into the U.S.

**Conclusion**

13. Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the defendant with transporting aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

Amanda L. Harvey 9/30/2026
Amanda L. Harvey
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1
of the Federal Rules of Criminal Procedure.

Date: Oct. 1, 2026

Hon. Gary L. Favro
United States Magistrate Judge